

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York  10007*

February 25, 2008

**BY FACSIMILE**

Hon. Leonard B. Sand
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Olivia Jeanne Bowen*,
              07 Cr. 961

Dear Judge Sand:

      The Government respectfully requests that Your Honor schedule a bail revocation hearing, pursuant to 18 U.S.C. § 3148, to determine whether the bail of Olivia Jeanne Bowen, the defendant, should be revoked in advance of trial.  Trial is scheduled to commence on March 10, 2008.

      In the course of preparations for trial, the Government has learned that the defendant and a co-conspirator are engaging in efforts to obstruct justice.  In addition, the Government has discovered that the defendant may have hidden substantial assets that are proceeds of the crimes for which the defendant is charged.  Moreover, the defendant's attorney, Leonard F. Joy, Esq., has informed the Government that he has been unable to contact the defendant for more than a week, raising additional concerns that the defendant may be contemplating flight.  Accordingly, the defendant's bail should be revoked, or bail should be modified to ensure that the defendant does not continue to obstruct justice or flee with the aid of hidden assets.

      **I.**      **Background**

      The defendant is charged in a two-count Indictment with participating in a wire fraud conspiracy and committing wire fraud.  The defendant is alleged to have induced victims to wire money to her, or to other accounts at her direction, for alleged investments that promised quick payouts and extraordinary returns, but that did not actually exist.  As the evidence will show, after the victims' promised returns failed to materialize, the defendant, along with her co-conspirators, induced victims into contributing additional funds with promises that slightly more

Hon. Leonard B. Sand
February 25, 2008
Page 2 of 4

funds were needed to "complete" particular investment programs. The defendant and her co-conspirators also lulled victims into refraining from contacting the authorities with repeated— and empty— promises that the victims would be repaid soon.

The losses associated with the scheme are substantial. Almost $2 million in victims' funds flowed through the defendant's account alone, and it appears that several hundred thousand dollars of additional victim funds were wired to other co-conspirators or to third-party bank accounts at the direction of the defendant. Based on the loss to victims from the scheme, the defendant's role in the scheme, and other sentencing factors, the Government's preliminary Guidelines analysis indicates that the defendant will have an offense level of 36 upon conviction, without taking into account the defendant's obstruction of justice set forth below. In combination with the defendant's Criminal History Category of I, the applicable Guidelines range would be 188-235 months' imprisonment.

> **II.     The Defendant's Bail Should be Revoked or Modified**
>
> > A.     <u>The Government Has Learned that the Defendant and a Co-Conspirator Have Obstructed Justice</u>

In the course of speaking with witnesses in preparation for trial, the Government has spoken with a witness who states that the defendant threatened him in 2007, before she was charged with the instant offenses. The Government also has learned from several victims that the defendant and a co-conspirator continue to engage in efforts to tamper with witnesses and obstruct justice.

Last week, the Government spoke to a witness who stated that when he informed the defendant in April 2007 of his intent to file a complaint with the FBI concerning the fraudulent scheme, the defendant replied that he should not do so because there were some "pretty heavy duty players involved" and he could get killed if he attempted to file a complaint. In addition, the Government has spoken with several victims in the past two weeks who stated that the defendant is continuing to contact them, and to promise that she is in the process of obtaining funds to repay them. One of the victims informed the Government that the defendant's continued promises of repayment made him less willing to testify because, even if it is unlikely that her promises are true, he desperately needs the money that he gave the defendant and is afraid that, were the defendant to be convicted, she will be unable to continue trying to secure funds to repay him. The Government also has learned from another witness that a co-conspirator of the defendant told the witness that if she wanted to ever be repaid, she should not speak to the FBI until the defendant's case is over.

The defendant's newly-discovered past threats, as well as the brazen efforts of the defendant and her co-conspirator to continue making false promises of repayment (or threats of

Hon. Leonard B. Sand
February 25, 2008
Page 3 of 4

non-payment) that are intended to make victims more reticent to complain to the authorities or testify against her, warrant revocation of the defendant's bail. The defendant continues to engage in criminal conduct on the eve of jury selection in this matter. The only effective way to terminate this conduct is to remand the defendant prior to the commencement of trial.

        B.        <u>The Government Has Learned that the Defendant May Have Substantial Hidden Assets</u>

Subsequent to the execution of the initial arrest warrant in July 2007, the defendant was presented before the Hon. C. Clifford Shirley in the Eastern District of Tennessee, and she was ordered released on her own recognizance. That release order was continued when the defendant was presented in this District before the Hon. Douglas F. Eaton on September 14, 2007. The defendant obtained the release order after asserting in her financial affidavits, submitted to Magistrate Judges Shirley and Eaton, that she essentially had no assets. *See*, *e.g.*, Ex. A (financial affidavit from this District asserting $100 in cash and a car worth $2000 as her only assets). The defendant's assertion that she lacked assets with which to finance a flight from justice supported a finding that the defendant presented a low risk of flight, and thus did not require imposition of a personal appearance bond or other conditions to secure her appearance at trial.

In the course of analyzing financial documents pertaining to the defendant and interviewing witnesses in preparation for trial, however, the Government has discovered that the defendant may have substantial hidden assets that are proceeds from the charged offenses, and that could be used to finance a flight from justice. Last week, a financial analyst with the FBI completed an analysis of the defendants' voluminous bank records. This analysis determined that, between mid-2004 and the end of 2006, the defendant withdrew almost $500,000 in cash from her bank accounts, which were funded almost entirely by wires from victims and co-conspirators in the charged fraudulent scheme. In addition, last week, the Government learned from a witness that the defendant claimed to have purchased homes for her children with proceeds from the "investment" scheme. The Government has been unable to verify the validity of this assertion, but it also cannot determine the ultimate destination of the funds that the defendant withdrew in cash, despite undertaking diligent efforts to do so.

The defendant appears to have made misrepresentations in her financial affidavits that were relied upon by Magistrate Judges Shirley and Eaton to release the defendant on her own recognizance. Accordingly, the defendant's bail should be revoked, or in the alternative, modified to address the possibility that the defendant continues to have substantial hidden assets, either in cash or real property, that are proceeds of criminal activity and that could be used to finance a flight from justice.

Hon. Leonard B. Sand
February 25, 2008
Page 4 of 4

      The Government's concerns with respect to the defendant were amplified when Mr. Joy, counsel for the defendant, informed the Government today that he has been unable to get in contact with the defendant for more than a week. Counsel's inability to contact his client as trial approaches reinforces the concern that the defendant does not intend to appear at trial, and will utilize hidden assets to flee rather than show up for the scheduled trial date.

### III.    Conclusion

      For the reasons stated above, the Government respectfully requests that the Court schedule a bail revocation hearing as soon as possible to address these issues. The Government also requests that, in the event defense counsel continues to be unable to contact the defendant, the Court issue a warrant for the defendant's arrest or a summons compelling the defendant to appear before the Court.

      Respectfully submitted,

      MICHAEL J. GARCIA
      United States Attorney

By:    s/ Howard S. Master
      Howard S. Master
      Assistant United States Attorney
      Southern District of New York
      (212) 637-2248

cc:    Leonard F. Joy, Esq.